# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL OBERACKER, | ) | CASE NO. 1:17CV2547 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| JEFFREY B. NOBLE, Warden | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

This matter has been referred to the undersigned United States Magistrate Judge for preparation of a Report and Recommendation pursuant to Local Rule 72.2(b)(2). Before the Court is the Petition of Daniel Oberacker ("Oberacker" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Oberacker is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Oberacker*, Cuyahoga County Court of Common Pleas Case No. CR-96-342242.

Currently pending is Respondent Jeffrey B. Noble's Motion to Dismiss the Petition as Time-Barred. (Doc No. 8.) For the reasons that follow, it is recommended Respondent's Motion be GRANTED and the Petition be DISMISSED as time-barred.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Oberacker's conviction as follows:

> {¶ 2} A review of the record on appeal indicates that Oberacker pled guilty on February 14, 2000 to two counts of Rape (a first degree felony under the pre-Senate Bill 2 version of R.C. 2907 .02), committed over a period of several years, between 1992 and 1995, and which involved two adolescent female victims who were between the ages of eleven and twelve when the offenses first began.  Appellant concedes that one of the victims was the daughter of his then live-in girlfriend (this victim's initials are "J.R."), and the other victim was his niece (this victim's initials are "J.S.").  See appellant's brief at 1.  As part of the plea bargain the court nolled four additional counts of Rape involving one of the victims.

> {¶ 3} The presentence investigation report indicated that Oberacker, despite having a history of driving under the influence convictions and admitting to drinking a six-pack of beer per day on two days each week, denied having a substance abuse problem or any mental health problems, denied responsibility or guilt for the offenses, and denied being attracted to younger women.

> {¶ 4} Oberacker was sentenced to 8 to 25 years on each of the two counts with the sentences to run consecutive to one another. The court also determined at the sentencing hearing, subsequent to evidence being taken, that Oberacker was a sexual predator and subject to registration requirements.

> {¶ 5} On April 18, 2000 Oberacker filed a notice of appeal from the sexual predator classification, arguing, in part, that the court had not provided notice of the sexual predator classification hearing.  This court reversed and remanded the matter on the grounds that the trial court had indeed failed to provide Oberacker with notice of the hearing.  *See State v. Oberacker* (Mar. 22, 2001), Cuyahoga App. No. 77876, 2001 Ohio App. LEXIS 1300.

> {¶ 6} On remand, the trial court granted Oberacker's motion to have an independent psychological assessment performed and his motion to receive copies of the entire criminal file.

> {¶ 7} On January 17, 2002 the trial court conducted the second sexual predator classification hearing.

> {¶ 8} At this second hearing, defense counsel stated that the defense had been given adequate time and notice within which to prepare for the hearing, that the defense waived any formalities and wanted to proceed.  Tr. 4-5.

{¶ 9} The state proffered the following five exhibits at the hearing: (1) the presentence report which was prepared for the original 2000 sentencing hearing; (2) a copy of the transcript from the original sexual predator classification hearing, which contains therein testimony from the elder victim, namely J.S.; (3) a statement authored by the younger victim, J.R.; (4) the police statement authored by the elder victim, J.S.; and, (5) the psychiatric report on Oberacker which was prepared on January 2, 2002 by Dr. Aronoff of the Court's Psychiatric Clinic.  These exhibits, without objection by the defense, were admitted by the court into evidence.

* * *

The defense proffered the psychological report on Oberacker which was prepared by Dr. Kaplan and a letter from Oberacker's wife.  Both of these were admitted into evidence.

* * *

{¶ 23} Oberacker testified on his own behalf at the classification hearing.  Tr. 55-61. On direct examination by defense counsel Oberacker stated that while in prison he successfully completed the sexual offender program there over a period of several months.  From this program Oberacker claimed to have learned that what he had done was wrong and the role alcohol played in his poor decision making. Tr. 56-57. Oberacker believed that he had matured while in prison and now took full responsibility for his actions, whereas prior to prison he had attempted to place the blame on others for his sexually offending.  Tr. 57.  Oberacker next claimed that he has no interest in having sexual relations with children in the future.  Tr. 58.

{¶ 24} On cross-examination Oberacker admitted that he had at least ten episodes of sexual intercourse with the girls, was not continuously intoxicated during the commission of the offenses herein, but did provide the two girls alcohol and marijuana.  Tr. 58-60.  Oberacker next testified that he knew what it was wrong to have sex with children at the time he committed these offenses. Tr. 60.

{¶ 25} Subsequent to closing arguments by the parties the trial court reserved making its ruling.

{¶ 26} On January 29, 2002, in open court with counsel and parties present, the trial court classified Oberacker as being a sexual predator * * *

*See State v. Oberacker*, 2003 WL 125277 at * 1-5 (Ohio App. 8th Dist. Jan 16, 2003).

## II. Procedural History

### A.    Trial Court Proceedings

3

In August 1996, a Cuyahoga County Court of Common Pleas issued an Indictment charging Oberacker with thirty (30) counts of rape in violation of Ohio Rev. Code § 2907.02. (Doc. No. 8-1, Exh. 1.)  Fifteen (15) of these counts alleged rape of a minor under the age of thirteen.  (*Id*.)  Oberacker retained counsel and pled not guilty.  (Doc. No. 8-1, Exh. 2.)

On February 16, 2000, Oberacker withdrew his not guilty plea and entered a plea of guilty to two counts of rape (Counts 1 and 26) in violation of Ohio Rev. Code § 2907.02.  (Doc. No. 8-1, Exh. 3.)  All remaining counts were nolled.  (*Id*.)  The state trial court accepted Oberacker's plea and found him guilty.  (*Id*.)

On April 6, 2000, the trial court sentenced Oberacker to two consecutive sentences of eight (8) to twenty-five (25) years imprisonment, for an aggregate prison term of sixteen (16) to fifty (50) years.  (Doc. No. 8-1, Exh. 4.)  Several days prior to sentencing, on March 31, 2000, the state trial court determined Oberacker was a sexual predator pursuant to Ohio Rev. Code § 2950.09(A) and notified him of his registration duties.  (Doc. No. 8-1, Exh. 5.)

**B.** **Direct Appeal**

On April 19, 2000, Oberacker, proceeding *pro se*, filed a notice of appeal to the Eighth District Court of Appeals of Ohio (hereinafter "state appellate court").  (Doc. No. 8-1, Exh. 6.) He also filed a Motion for Appointment of Counsel and Transcript at State's Expense, which was granted.  (Doc. No. 8-1, Exh. 7.)

On August 10, 2000, Oberacker, through counsel, filed an appellate brief, raising the following three grounds for relief:

> I.  THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

4

II.     THE SEXUAL PREDATOR HEARING IN THE CASE AT BAR
        VIOLATED APPELLANT'S DUE PROCESS RIGHTS, GUARANTEED
        BY THE UNITED STATES CONSTITUTION AND OHIO
        CONSTITUTION, WHEN THE HEARING FAILED TO COMPORT TO
        THE MANDATE OF R.C. 2950.09 WHICH REQUIRES NOTICE.

III.    THE EVIDENCE PRESENTED AT THE SEXUAL PREDATOR
        HEARING IS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE
        'BY CLEAR AND CONVINCING EVIDENCE' THAT APPELLANT IS
        LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE
        SEXUALLY ORIENTED OFFENSES.

(Doc. No. 8-1, Exh. 8.)  The State filed a brief in response, in which it conceded "no notice of

the sexual predator classification hearing was given to Appellant prior to the sentencing

hearing."  (Doc. No. 8-1, Exh. 9 at Page ID# 150.)  The State requested the matter be remanded

to the trial court for an additional sexual predator hearing pursuant to the notice requirement of

Ohio Rev. Code § 2950.09.  (*Id.*)

        In an opinion filed April 11, 2001, the state appellate court reversed and remanded, as

follows:

> Defendant Daniel Oberacker pleaded guilty to two counts of rape, each count
> against a different teenaged victim.  Just before sentencing, and without any prior
> notice to defendant, the court classified defendant a sexual predator.  The primary
> issue in this appeal is whether the court gave defendant sufficient notice of the
> sexual predator classification hearing.
>
> The state concedes the court did not give defendant adequate notice of the sexual
> predator classification hearing.  In *State v. Gowdy* (2000), 88 Ohio St.3d 387, 727
> N.E.2d 579, the Ohio Supreme Court established that the notice provision of R.C.
> 2950.09(B)(1) is mandatory and a failure to provide notice is *per se* error.  Hence,
> despite the overwhelming evidence justifying the court's decision to classify
> defendant as a sexual predator and defendant's failure to object to lack of notice at
> the sexual predator classification hearing, we are bound under *Gowdy* to sustain the
> second assignment of error and remand the cause for further proceedings.
>
> Despite the state's concession, defendant claimed at oral argument that his claim
> of ineffective assistance of counsel went beyond counsel's failure to object to the
> lack of notice and encompassed a failure to protect defendant's due process rights

5

in a way that cast doubt on the validity of the guilty plea.  We see nothing in either appellant's merit brief or reply brief that makes this argument, and there is nothing in the proceedings that would cause us to doubt the validity of defendant's guilty plea.  Certainly, counsel's failure to prepare for the sexual predator hearing could be explained by his admitted failure to receive notice of the hearing.

Reversed and remanded.

(Doc. No. 8-1, Exh. 11.)

## C.    Remand for Sexual Predator Classification Hearing

On remand, the state trial court conducted a sexual predator classification hearing.  (Doc. No. 8-1, Exh. 12.)  On January 30, 2002, the trial court issued a Journal Entry, noting it had "provided the Defendant with notice of this House Bill 180 hearing" and stating "Defense stipulates to the sufficiency of notice and waives any defects."  (*Id*.)  The trial court took the matter under advisement.  (*Id*.)

On February 7, 2002, the state trial court issued a Journal Entry finding Oberacker was "automatically classified as a sexual predator pursuant to R.C. 2950.09(A)."  (Doc. No. 8-1, Exh. 13.)

## D.    Delayed Appeal

On March 28, 2002, Oberacker, through new counsel, filed a notice of appeal and Motion for Leave to file Delayed Appeal in the state appellate court.  (Doc. No. 8-1, Exh. 14, 15.)  Therein, Oberacker asserted the state trial court failed to notify counsel he was appointed to represent him on appeal until after the filing due date.  (Doc. No. 8-1, Exh. 15.)  On April 17, 2002, the state appellate court granted Oberacker's Motion for Leave to file Delayed Appeal.  (Doc. No. 8-1, Exh. 16.)

In his merit brief, Oberacker raised the following grounds for relief:

    I.       THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO PROVE 'BY CLEAR AND CONVINCING EVIDENCE' THAT APPELLANT 'IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES.'

    II.     THE TRIAL COURT ERRED WHEN IT ENTERED AN ORDER FINDING THAT THE APPELLANT WAS 'AUTOMATICALLY FOUND TO BE A SEXUAL PREDATOR' PURSUANT TO R.C. 2950.09(A).

(Doc. No. 8-1, Exh. 17.)  The State filed a brief in response, in which it conceded error only with regard to Oberacker's second ground for relief.  (Doc. No. 8-1, Exh. 18.)  Specifically, the State "concede[d] that an entry stating Appellant was [automatically] classified under R.C. 2950.09(A) is in error and should be corrected by a *nunc pro tunc* entry by this Court."  (*Id.*)

On January 27, 2003, the state appellate court issued a decision, affirming in part and remanding.  (Doc. No. 8-1, Exh. 19.)  Therein, the state appellate court overruled Oberacker's first assignment of error, finding in relevant part as follows:

{¶ 40} In the present case, the first prong of R.C. 2950.01(E) was clearly satisfied when the appellant pled guilty to two counts of rape in violation of R.C. 2907.02. The second prong requires the state to show that the appellant is likely to engage in the future in one or more sexually oriented offenses.  The record discloses that the sexual predator hearing was replete with testimony and evidence supporting both parties' viewpoints.  The trial court weighed this competing evidence and discussed on the record the evidence and factors it used in arriving at the sexual predator conclusion as specifically required by *Eppinger*, 91 Ohio St.3d 158, 743 N.E.2d 881 and *Thompson, supra*.  In particular, the trial court noted the following factors at the close of the sexual predator hearing: age of the victims (see former R.C. 2950.09 [B] [2][c]; current R.C. 2950.09[B][3][c]), the fact that there's more than one victim (see former R.C. 2950.09[B][2][d]; current R.C. 2950.09[B][3] [d]), the impairment of the victims through the use of marijuana and/or alcohol (see former R.C. 2950.09[B][2][e]; current R.C. 2950.09[B][3] [e]).  Considering the substance and results of the expert reports herein, particularly Dr. Aronoff's which indicates a risk by Oberacker to sexually reoffend, the remaining evidence which was before the trial court, and the factors utilized by the court, we cannot conclude that the trial court abused its discretion in determining by clear and convincing evidence that Oberacker poses a risk of sexually reoffending and should be classified as a sexual predator.

(*Id.*)  The court, however, sustained Oberacker's second assignment of error, noting "it is obvious the trial court was mistaken in determining that Oberacker was 'automatically' a sexual predator pursuant to R.C. 2905.09(A)."  (*Id*. at Page ID# 248.)  Accordingly, the state appellate court "remanded to the trial court for the preparation and entry of a judgment entry *nunc pro tunc*, as and for February 7, 2002, deleting the word 'automatically' from the original entry of February 7, 2002."  (*Id*. at Page ID#249.)

On February 10, 2003, the state trial court issued a Journal Entry as ordered by the state appellate court deleting the word "automatically" from its previous journal entry.  (Doc. No. 8-1, Exh. 20.)

On March 11, 2003, Oberacker filed a notice of appeal and Memorandum in Support of Jurisdiction with the Supreme Court of Ohio.  (Doc. No. 8-1, Exh. 37.)  The State filed a Memorandum in Response on April 7, 2003.  (*Id*.)  On May 16, 2003, the Supreme Court of Ohio denied leave to appeal and dismissed Oberacker's appeal as not involving any substantial constitutional question.  (Doc. No. 8-1, Exh. 21.)

**E.      State Habeas Petition**

Over thirteen years later, on November 21, 2016, Oberacker, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus in the Ohio Court of Appeals for the Twelfth District.[1] (Doc. No. 8-1, Exh. 22.)  Therein, Oberacker raised the following sole ground for relief:

---

[1] In his state court habeas Petition, Oberacker states he "previously filed a writ of Habeas Corpus with this Court on August 26, 2016, styled *Daniel Oberacker v. Rhonda Richard*, Warden, CA 20160027. . . The petition was withdrawn on October 7, 2016 by the attorney of record.  I am now filing this writ of Habeas Corpus *pro se*, on the same grounds as the August 26, 2016 filing."  (Doc. No. 8-1, Exh. 22 at Page ID# 255.)

8

> The trial court had no authority to disregard the 8th district court of appeals order that reversed petitioner's conviction.  The trial court did not have jurisdiction to label petitioner as a sexual predator and re-impose the original sentence after the appellate court ordered a reversal.

(*Id*.)  In the Petition, Oberacker asserted his "direct appeal included the conviction, [sexual predator] classification, and sentence."  (*Id*. at Page ID#264.)  Therefore, he argued, when the state appellate court issued its April 11, 2001 decision reversing and remanding, his conviction was reversed and the trial court was required to schedule a new trial.  (*Id*. at Page ID#263-264.)  Because the trial court failed to do so, Oberacker argued he was entitled to immediate release.  (*Id*.)

The State filed a Motion for Summary Judgment on December 5, 2016.  (Doc. No. 8-1, Exh. 23.)  Therein, the State argued "Oberacker filed a direct appeal wherein he challenged only his classification as a sexual predator, asserting that the hearing had been conducted without mandatory notification pursuant to R.C. 2950.09, insufficient evidence to sustain the sexual predator classification, and ineffective counsel for failing to challenge said classification without notice."  (*Id.* at PageID# 283.)  Thus, the State maintained the appellate court "never reversed Oberacker's conviction or sentence because Oberacker never challenged either in his direct appeal."  (*Id.* at PageID# 288.)  The State noted that, "if [Oberacker] wanted to challenge his conviction and/or sentence, he should have done so in his direct appeal.  But he didn't, and now, he can't."  (*Id*.)

Oberacker thereafter filed a Reply, in which he asserted his direct appeal "did include the conviction and sentence and not just the classification as the State argues."  (Doc. No. 8-1, Exh. 24 at PageID# 311.)

9

On January 12, 2017, the Ohio Court of Appeals for the Twelfth District issued an Entry dismissing Oberacker's habeas petition.  (Doc. No. 8-1, Exh. 25.)  Therein, that court found (in relevant part) as follows:

> In his petition for habeas corpus, petitioner asserts that his first appeal did not merely result in the reversal of his sexual offender classification, but also the reversal of his conviction and sentence.   Petitioner therefore concludes that he must be immediately released from confinement and any further obligation to the state in relation to this matter.
>
> Habeas corpus is extraordinary remedy normally available only when there is no alternative legal remedy.  *State ex rel. Jackson v. McFaul*, 73 Ohio St.3d 185, 1995-Ohio-228.  Habeas relief is generally only available when the petitioner is entitled to immediate release from confinement.  *Id.  Pewitt v. Superintendent, Lorraine Correctional Institution*, 64 Ohio St.3d 470, 1992-Ohio-91.  Habeas corpus may not be used as a substitute for other forms of action, such as direct appeal, post-conviction relief or mandamus.  *Adams v. Humphrey*, 27 Ohio St.3d 43 (1986).
>
> The Eighth District Court of Appeals entry reversing and remanding petitioner's first appeal related only to the sexual predator determination.  The opinion filed in support of the entry reads as follows:
>
>> Despite the state's concession, defendant [petitioner] claimed at oral argument that his claim of ineffective assistance of counsel went beyond counsel's failure to object to the lack of notice [regarding the sexual predator classification hearing] and encompassed a failure to protect defendant's due process rights in a way that casts doubt on the validity of the guilty plea.  We see nothing in either appellant's merit brief or reply brief that makes this argument, and there is nothing in the proceedings that would cause us to doubt the validity of defendant's guilty plea.
>
> If petitioner believes that the Eighth District intended to reverse his entire conviction, he certainly has or had the opportunity to appeal the common pleas court's decision following the remand. * * *

(*Id.*)  As of the date of this Order, it does not appear Oberacker appealed the above decision to the Supreme Court of Ohio.

**F.      Application to Reopen Appeal Pursuant to Ohio App. R. 26(B)**

10

Several months later, on April 6, 2017, Oberacker, proceeding *pro se*, filed an Ohio

App. R. 26(B) Application for Reopening in the state appellate court.  (Doc. No. 8-1, Exh. 26.)

Therein, he claimed appellate counsel was ineffective for failing to raise the following grounds

for relief on direct appeal:

    I.     THE TRIAL COURT FAILED TO STRICTLY COMPLY WITH CRIM
          R. 11 IN ORDER TO MAKE A CONSTITUTIONAL
          DETERMINATION THAT APPELLANT'S PLEA WAS KNOWING,
          INTELLIGENT, AND VOLUNTARY.

    II.    THE TRIAL COURT FAILED TO COMPLY WITH CRIM. R. 11 IN ITS
          ADVISEMENT OF THE FULL CONSEQUENCES OF A GUILTY
          PLEA.

    III.   TRIAL COUNSEL WAS INEFFECTIVE, VIOLATING APPELLANT'S
          SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
          COUNSEL.

    IV.   THE TRIAL COURT FAILED TO COMPLY WITH CRIM. R. 32(A)(1),
          DENYING APPELLANT HIS RIGHT TO ALLOCUTION.

    V.    THE TRIAL COURT FAILED TO COMPLY WITH STATUTORY
          SENTENCING REQUIREMENTS RESULTING IN APPELLANT'S
          SENTENCE AS CONTRARY TO LAW.

    VI.   THE SEXUAL PREDATOR LABEL IMPOSED ON APPELLANT
          REQUIRED FACT FINDING WITHOUT THE SIXTH AMENDMENT
          GUARANTEE OF A JURY TRIAL AND PROOF BEYOND A
          REASONABLE DOUBT.

(*Id.*)  Oberacker acknowledged his Application was untimely but argued "appellate counsel's

inadequacy and failure to appeal the conviction or sentence and Appellant's inability to identify

such errors caused the delay."  (*Id.*)  He also maintained the delay was due to the fact he "was

under extreme duress and in fear for his life due to abuse from a state paired cellmate."  (*Id.*)

Oberacker asserted that, due to these factors, he "only recently became aware that appellate

11

counsel never appealed the conviction or sentence as the *pro se* request to appeal specified." (*Id.*)

The State filed a Memorandum in Opposition (Doc. No. 8-1 at Page ID#427-431), to which Oberacker replied.  (Doc. No. 8-1, Exh. 28.)

On July 5, 2017, the state appellate court found Oberacker had failed to establish "good cause" for his untimely Application and, further, that his Application exceeded the ten-page limitation set forth in Ohio App. R. 26(B)(4).  (Doc. No. 8-1, Exh. 29.)  *See also State v. Oberacker*, 2017 WL 2875707 (Ohio App. 8th Dist. July 5, 2017).  The state appellate court explained as follows:

{¶ 4} Although Oberacker acknowledges that his application is delayed, none of the grounds asserted for his untimely filing support a finding of good cause. Oberacker first asserts that his "appellant's counsel inadequacy and failure to appeal the conviction or sentence" coupled with his own "inability to identify such errors" constitutes good cause for his untimely filing.  This court, however, has consistently rejected the argument that ineffective assistance of counsel on direct appeal is a sufficient basis for permitting the untimely filing of an application for reopening.  *State v. Mosley*, 8th Dist. Cuyahoga No. 79463, 2002–Ohio–1101, reopening disallowed, 2005–Ohio–4137, ¶ 4, citing *State v. Gross*, 8th Dist. Cuyahoga No. 76836, 2000 Ohio App. LEXIS 3769, 2000 WL 1177496 (Aug. 17, 2000), reopening disallowed, 2005–Ohio–1664, ¶ 2–3; *State v. Rios*, 75 Ohio App.3d 288, 599 N.E.2d 374 (8th Dist.1991). Likewise, Oberacker's lack of training in the law does not establish good cause.  *See State v. Ramirez*, 8th Dist. Cuyahoga No. 78364, 2005–Ohio–378, ¶ 4.

{¶ 5} Next, Oberacker contends that during the appeal time, he "was under extreme duress and in fear of his life due to abuse from a state-paired cell mate" and, consequently, he was unable to receive court documents and "was dependent on information relayed through a family member who had no legal training, experience or understanding of the proceedings."  But this argument also fails to establish good cause.  Aside from the lack of authority recognizing alleged "extreme duress" as grounds for good cause, this argument does not prove good cause to support the 16–year delay.  *See State v. Mitchell*, 8th Dist. Cuyahoga No. 88977, 2007–Ohio–6190, reopening disallowed, 2009–Ohio–1874, ¶ 5 ("even if this court would deem [applicant's] lack of communication as good cause, such good cause does not exist for an indefinite period of time"); *see also State v.*

*Morris*, 10th Dist. Franklin No. 05AP–1032, 2010–Ohio–786, ¶ 10 (finding applicant's alleged diagnosis and classification as "seriously mentally ill" did not provide support for his claim that his mental health issues prevented him from filing a timely application).  Likewise, Oberacker's reliance on individuals not trained in the law does not suffice as good cause for failure to seek timely relief under App.R. 26(B). *See State v. Alexander*, 151 Ohio App.3d 590, 2003–Ohio–760, 784 N.E.2d 1225 (8th Dist.), reopening disallowed, 2004–Ohio–3861, ¶ 4.

{¶ 6} Lastly, Oberacker argues that he only "recently" became aware that his appellate counsel never challenged the underlying conviction and sentence in his direct appeal.  Oberacker's ignorance, however, does not establish good cause. This court has consistently held that the failure of appellate counsel to notify applicant of the court's decision or the applicant's ignorance of the decision does not state good cause for untimely filing.  *State v. West*, 8th Dist. Cuyahoga No. 92508, 2009–Ohio–6217, reopening disallowed, 2010–Ohio–5576; *State v. Robert Plaza*, 8th Dist. Cuyahoga No. 83074, 2004–Ohio–3117, reopening disallowed, 2005–Ohio–5685.

{¶ 7} Here, we find no basis to excuse Oberacker's exceptional delay in filing his application for reopening. He fails to demonstrate good cause to accept his untimely filing under App.R. 26(B).  As a consequence, Oberacker has not met the standard for reopening.

{¶ 8} Moreover, Oberacker's application exceeds the ten-page limitation set forth in App.R. 26(B)(4).  This procedural defect provides another independent reason for dismissing the application.  *State v. Harris*, 8th Dist. Cuyahoga No. 94388, 2011–Ohio–194, reopening disallowed, 2011–Ohio–4403, ¶ 2; *State v. Stadmire*, 8th Dist. Cuyahoga No. 88735, 2007–Ohio–3644, reopening disallowed, 2011–Ohio–921, ¶ 4.

*Id*.

On July 27, 2017, Oberacker, proceeding *pro se*, filed a notice of appeal in the Supreme Court of Ohio.  (Doc. No. 8-1, Exh. 30.)  In his Memorandum in Support of Jurisdiction, Oberacker raised the following Propositions of Law:

    I.       COUNSEL WHO FAILS TO FILE AN APPEAL AS INSTRUCTED BY THE DEFENDANT IS CONSTITUTIONALLY INEFFECTIVE.

    II.     THE 'GOOD CAUSE' SHOWING REQUIRED BY APP. R. 26(B) IS AN INFINITE BAR.

13

(Doc. No. 8-1, Exh. 31.)

On November 1, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4). (Doc. No. 8-1, Exh. 33.)

### G. Federal Habeas Petition

On November 27, 2017,[2] Oberacker, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following nine grounds for relief:[3]

I.  Petitioner Daniel Oberacker was deprived of his first right of appeal from a criminal conviction under O.R.C. 2505.03 (& 2953.08) & the Ohio Constitution, Article IV, section 3(B)(2), is spite of timely perfecting an appeal as required under Ohio rules of Appellate procedures Rule 3 & 4.

II.  Ohio is in direct conflict with the holding of *Roe v. Flores- Ortega*, 528 U.S. 470 (2000). Ohio is in direct conflict with the holding of *Evitts v. Lucey*, 469 U.S. 387 (1985). Ohio is allowing the bypassing of mandates established in *Anders v. California,* 366 U.S. 738 (1967).

III.  Ohio has denied Daniel Oberacker equal protection of the laws.

IV.  The trial court failed to strictly comply with Crim. R. 11 in order to make a Constitutional determination that Oberacker's plea was knowing, intelligent and voluntary.

V.  The trial court failed to comply with Crim. R. 11 in its advisement of the full consequences of a guilty plea.

VI.  Trial counsel was ineffective, violating Appellant's Sixth Amendment right to effective assistance of counsel.

---

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until December 7, 2017, Oberacker states he placed it in the prison mailing system on November 27, 2017. (Doc. No. 1 at 15.) Thus, the Court will consider the Petition as filed on November 27, 2017.

[3]  Oberacker included the first three grounds for relief on the standard form provided for habeas petitioners, and included the remaining six grounds in an attachment to his Petition.

14

VII. The trial court failed to comply with Crim. R. 32(A)(1), denying Appellant his right to allocution.

VIII. The trial court failed to comply with statutory sentencing requirements resulting in Oberacker's sentence as contrary to law.

IX. The sexual predator label imposed on Oberacker required fact finding without the sixth amendment guarantee of a jury trial and proof beyond a reasonable doubt.

(Doc. No. 1.)

Respondent filed a Motion to Dismiss the Petition as Time-Barred on February 28, 2018.

(Doc. No. 8.) Oberacker filed a Response on March 26, 2018. (Doc. No. 9.)

### III. Law and Argument

**A.** **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**B.**     **One-Year Limitation**

Pursuant to § 2244(d)(1)(A), the AEDPA's one year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Here, Oberacker was sentenced on April 6, 2000 and timely appealed on April 19, 2000.  (Doc. No. 8-1, Exhs. 4, 6.)  On April 11, 2001, the state appellate court reversed and remanded for a sexual predator classification hearing that complied with the relevant notice provisions set forth in Ohio Rev. Code 2905.09(B)(1).  (Doc. No. 8-1, Exh. 11.)  On remand, the state trial court conducted a sexual predator classification hearing after providing notice to Oberacker and his counsel, and issued a Journal Entry on February 7, 2002 finding he was "automatically classified as a sexual predator pursuant to R.C. 2905.09(A)."  (Doc. No. 8-1, Exh. 13.)

Oberacker filed a motion for delayed appeal, which was granted by the state appellate court on April 17, 2002.  (Doc. No. 8-1, Exhs. 14, 15, 16.)  On January 27, 2003, the state appellate court issued a decision, affirming in part and remanding for issuance of a *nunc pro tunc* sentencing entry.  (Doc. No. 8-1, Exh. 19.)  On February 10, 2003, the state trial court issued a *nunc pro tunc* Journal Entry as ordered by the state appellate court.  (Doc. No. 8-1, Exh. 20.) Oberacker filed a notice of appeal to the Supreme Court of Ohio, which denied leave to appeal and dismissed Oberacker's appeal as not involving any substantial constitutional question on May 16, 2003. (Doc. Nos. 8-1, Exh. 21, 37.)

Based on this sequence of events, Respondent argues Oberacker's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on August 14, 2003, ninety (90) days after the Supreme Court of Ohio declined jurisdiction over his direct appeal and the time to file a

timely petition for writ of *certiorari* in the United States Supreme Court expired.  (Doc. No. 8 at

9.)  *See Lawrence v. Florida*, 549 U.S. 327, 333, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007); *Giles*

*v. Beckstrom,* 826 F.3d 321 (6th Cir. 2016); *Cope v. Warden, Ross Correctional Inst*., 2017 WL

4402581 at * 4 (S.D. Ohio Oct. 2, 2017).  Respondent then asserts the limitations period

commenced on August 15, 2003 and, absent tolling, would have expired one year later on

August 15, 2004.  *Id.*

    As Respondent correctly notes, however, the AEDPA tolls the one-year limitations

period during the time "'a properly filed application for State postconviction or other collateral

review . . . is pending.' § 2244(d)(2)."  *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163

L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002);

*accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003).  "The time that an

application for state post-conviction review is 'pending' includes the period between (1) a lower

court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that

the filing of the notice of appeal is timely under state law."  *Id*.

    Only "properly filed" applications for post-conviction relief or collateral review toll the

statute of limitations, and "a state post-conviction petition rejected by the state court as untimely

is not 'properly filed' within the meaning of § 2244(d)(2)."  *Allen v. Siebert*, 552 U.S. 3, 128 S.

Ct. 2, 169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d

669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction

petition is therefore not 'properly filed' if it was rejected by the state court as untimely");

*Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D. Ohio Jan. 8, 2009).  A timely filed state

post-conviction matter, however, cannot serve to toll a statute of limitations which has already

17

expired before the motion was filed.  *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (i.e., restart the

clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations

period is expired, collateral petitions can no longer serve to avoid a statute of limitations."

*Vroman*, 346 F.3d at 602 (citation omitted).  Further, if a state court ultimately denies a petition

as untimely, that petition was neither properly filed nor pending and a petitioner would not be

entitled to statutory tolling.  *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir.

2007).

 A review of the record shows Oberacker made no filings between May 16, 2003 (the date

the Supreme Court of Ohio's opinion dismissing his direct appeal was journalized) and August

15, 2004 (the date the AEPA statute of limitations expired.)  Oberacker did file (1) state court

habeas Petitions on August 26, 2016 and November 21, 2016; and (2) a 26(B) Application for

Reopening on April 6, 2017.  (Doc. No. 8-1, Exhs. 22, 26.)  However, as noted above, state

collateral review proceedings can no longer serve to avoid the statute of limitations bar once the

limitations period is expired.  *See Vroman*, 346 F.3d at 602.  Because Oberacker's state habeas

Petitions and 26(B) Application were filed well after the statutory limitations period expired,

they did not have any further tolling effect.

 Thus, the Court finds Oberacker's conviction and sentence became "final" for purposes

of § 2244(d)(1)(A) on August 14, 2003, ninety (90) days after the Supreme Court of Ohio

declined jurisdiction over his direct appeal and the time to file a timely petition for writ of

*certiorari* in the United States Supreme Court expired.  Accordingly, the Court finds the

limitations period commenced on August 15, 2003 and, absent a later start date or equitable tolling, expired one year later on August 15, 2004.  *Id.*

Oberacker argues, however, the statute of limitations was never triggered (and, therefore, has not expired) because the state appellate court did not issue a decision regarding his conviction and sentence.  (Doc. No. 9 at 4.)  He maintains there are "two distinctively separate rights of appeal" at issue in this case: (1) a "civil" appeal from his sexual predator classification, and (2) a "criminal" appeal from his conviction and sentence.  (*Id*. at 5-6.)  Oberacker asserts he properly filed a *pro se* notice of direct appeal on April 19, 2000 but, against his wishes, appointed appellate counsel only pursued a "civil" appeal from his sexual predator classification and "forfeited" Oberacker's allegedly separate and independent "criminal" appeal from his conviction and sentence.  (*Id*. at 4-6, 9.)  Oberacker maintains that, because counsel failed to appeal his conviction and sentence, and the state appellate court never issued a judgment relating thereto, the "one-year federal AEDPA clock [was prevented] from ever starting."  (*Id*. at 15.)  Respondent does not address this issue.

For the following reasons, the Court finds this argument to be without merit.  The Court recognizes the Ohio Supreme Court has found Ohio's sexual classification statute (Ohio Revised Code Chapter 2950) to be remedial rather than punitive, and, therefore, sexual predator proceedings are considered to be "civil in nature."  *See State v. Wilson*, 113 Ohio St.3d 382, 389 (2007);  *State v. Cook*, 83 Ohio St.3d 404, 422 (1998); *State v. Durant*, 2017 WL 5197254 at * 2 (Ohio App. 8th Dist. Nov. 9, 2017); *Shie v. Voorhies*, 2009 WL 1212473 at * 15 (N.D. Ohio Apr. 30, 2009).  However, the Court is not persuaded Oberacker therefore had "two distinctively separate" rights of appeal, one "civil" and the other "criminal."  To the contrary, Ohio courts'

19

determination that the underlying purpose of its sexual classification statute is remedial in nature is a separate and distinct matter from its rules and procedures governing appeals.  Indeed, Oberacker has cited no authority that Ohio's sexual classification statute gives rise to a bifurcated appeal process where, as here, a criminal defendant's sentence and sexual predator classification determination were conducted contemporaneously and as part of the same underlying criminal proceedings.

Moreover, to the extent Oberacker is arguing the habeas statute of limitations did not begin to run due to an alleged defect in the state appellate court's 2001 and/or 2003 direct appeal decisions, this argument is without merit.  This Court has previously rejected arguments that a void state court judgment means the habeas clock has simply never started.  *See, e.g., Alford v. Goodrich*, 2014 WL 359996 at * 8 (N.D. Ohio Jan.31, 2014); *Hackett v. Bradshaw*, 2012 WL 6869833 at * 6 (N.D. Ohio, Dec.4, 2012).  In *Frazier v. Moore*, 2007 WL 3037256 at * 4 (6th Cir. Oct.15, 2007), the Sixth Circuit found that a defective state court judgment "does not lead to the conclusion that there was no judgment for the purpose of [AEDPA]'s one year statute of limitations.  Many of the petitions cognizable on federal habeas review challenge the validity of the underlying state court judgment.  The fact that the state court judgment may have been procured in violation of state or federal law does not, however, render the judgment null under § 2244(d) [of the AEDPA]."  *Id*. at * 5–6.  As noted by the *Frazier* court, "[i]f a judgment that was procured by a procedure that violated federal constitutional rights were sufficient to render a petitioner not in custody 'pursuant to the judgment of a state court' for the purpose of §§ 2244(d) and 2254, then the habeas regime embodied in these provisions would be substantially undermined."  *Id*. at * 5.

20

Accordingly, Oberacker's argument the habeas statute of limitations "simply never started" is without merit.

As the statutory limitations period expired on August 15, 2004 and Oberacker did not file his habeas petition until November 27, 2017, the Court finds the Petition is over thirteen years late and is untimely under § 2244(d)(1)(A).  Therefore, unless equitable tolling is appropriate or Oberacker is entitled to begin calculating the statute of limitations from an alternative date, the Petition should be dismissed as time-barred.[4]

**C.      State Created Impediment**

Pursuant to § 2244(d)(1)(B), the statute of limitations may commence later than the date upon which a petitioner's conviction and sentence becomes final if the petitioner demonstrates he was prevented from filing his federal habeas petition because of an impediment created by State action in violation of the Constitution or federal law.  Here, Oberacker argues his appellate counsel's failure to challenge his conviction and sentence on direct appeal, coupled with the state appellate court's failure to require counsel to file an *Anders* brief,[5] "created an impediment beyond [his] control."  (Doc. No. 9 at 17.)  He maintains he was not aware his appellate counsel

---

[4] Oberacker does not argue the limitations period should commence at a later date for any of the reasons set forth in §§ 2244(d)(1)(C)-(D).

[5] In *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Supreme Court set forth a procedure to safeguard an appellant's rights where appointed counsel comes to believe that an appeal would be frivolous.  *See Smith v. Robbins*, 528 U.S. 259, 264, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  In such a case, counsel must request permission to withdraw, "accompanied by a brief referring to anything in the record that might arguably support the appeal." *Robbins*, 528 U.S. at 271 (quoting *Anders*, 386 U.S. at 744). The court then "proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous."  *Id.*  The Supreme Court has since decided "the *Anders* procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals." *Robbins*, 528 U.S. at 276.

failed to challenge his conviction and sentence until 2016, when the State opposed his state court habeas petition on the grounds his direct appeal only challenged his sexual predator classification. (*Id*. at 12.) Oberacker maintains he "diligently pursued his claim once the state-imposed impediment was removed and . . . . had [he] been properly notified in 2000 [that his counsel had not challenged his conviction and sentence], as required, he most certainly would have pursued this claim immediately." (*Id*.)

Respondent does not directly address Oberacker's claim that appellate counsel's ineffectiveness constituted a State created impediment that prevented him from timely filing his federal habeas Petition. However, Respondent does dispute Oberacker's claim he was not aware for nearly sixteen years that appellate counsel failed to challenge his conviction, asserting such a claim is "belied by the record." (Doc. No. 8 at 12.) In this regard, Respondent notes "the appellate court's decision in his 2001 direct appeal expressly set forth that nothing in appellant's merit brief or reply brief made any argument that his plea was unlawful and, further, the court saw 'nothing in the proceedings that would cause us to doubt the validity of [his] guilty plea.'" (*Id*.) Respondent further notes the state appellate court's 2001 direct appeal decision was issued "before Oberacker's conviction became final, and before he actively participated in the 2002 sexual predator classification hearing pursuant to the court's remand in this same decision." (*Id*.)

To invoke the limitations provision set forth in § 2244(d)(1)(B), a habeas petitioner must establish that: "'(1) he was prevented from filing a federal habeas petition; (2) by State action; (3) in violation of the Constitution or federal law.'" *Glenn v. Coleman*, 2014 WL 4983661 at * 12 (N.D. Ohio Oct. 6, 2014) (quoting *Neff v. Brunsman*, 2007 WL 912122 at *7 (S.D. Ohio March 23, 2007)). *See also Montgomery v. Jeffreys*, 2011 WL 2784168 at *4 (S.D. Ohio July 6,

2011.) Interpreting this provision, the Sixth Circuit has found that "[t]he ineffective assistance of ... initial appellate counsel constitutes state action." *Winkfield v. Bagley*, 2003 WL 21259699 at *4 (6th Cir. May 28, 2003).  However, the court emphasized "Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the [habeas] petition." *Id.  See also Webb v. United States*, 2017 WL 655774 at * 5 (6th Cir. Feb. 17, 2017); *Heid v. Warden, Ross Correctional Inst*., 2017 WL 2225458 at * 7 (S.D. Ohio May 22, 2017) (collecting cases).  Relying on *Winkfield*, several courts have found § 2244(d)(1)(B) to apply in cases where the petitioner alleged facts indicating his counsel was ineffective in perfecting an appeal or pursuing an appeal requested by him, and such ineffectiveness actually prevented him from filing a timely habeas petition.  *See e.g. Waldron v. Jackson*, 348 F. Supp.2d 877, 882–886 (N.D. Ohio 2004); *Woods v. Jackson*, 2006 WL 746293 at *5–7 (S.D. Ohio March 22, 2006).

The Court finds Oberacker's argument he was prevented from timely filing his federal habeas Petition due to the ineffectiveness of his appellate counsel is without merit for the following reasons.  As noted above, courts within this Circuit have found that ineffectiveness of appellate counsel rises to the level of a State created impediment, and applied § 2244(d)(1)(B), where appellate counsel failed to perfect a timely appeal and/or failed to apprise petitioner of the status of his appeal.  *See e.g., Waldron*, 348 F.Supp.2d at 882-886 (finding failure of counsel to perfect a first appeal of right constituted a state-created impediment, justifying the tolling of the statute of limitations pursuant to § 2244(d)(1)(B)); *Woods,* 2006 WL 746293 at * 5-7 (same). Here, however, the record reflects appellate counsel did, in fact, perfect direct appeals, both from Oberacker's April 2000 sentencing entry and the state trial court's February 2002 determination

23

on remand that Oberacker constituted a sexual predator.  The state appellate court issued direct appeal decisions in April 2001 and again in January 2003 as a result of these appeals.  Notably, Oberacker has not asserted his appellate counsel failed to promptly apprise him of the fact the state appellate court issued direct appeal decisions in 2001 and 2003.

Rather, Oberacker argues he did not know until 2016 that his appellate counsel failed to challenge his *conviction and prison sentence* on direct appeal.  (Doc. No. 9 at 12.)  Or, stated conversely, Oberacker states he mistakenly believed, as of 2003, that his direct appeal encompassed both his conviction, prison sentence, and sexual predator classification.  (Doc. No. 9 at 6.)  He asserts appellate counsel's failure to challenge his conviction and sentence on direct appeal (as well as his failure to clearly advise Oberacker that he had failed to challenge his conviction and sentence) constitutes a State-created impediment, justifying statutory tolling of the statute of limitations under § 2244(d)(1)(B).

This argument fails for several reasons.  First, Oberacker does not explain how his mistaken belief that his direct appeal encompassed his conviction and prison sentence prevented him from timely filing a federal habeas petition at the conclusion of direct appeal proceedings.[6] To the contrary, if Oberacker was indeed under the impression he had exhausted challenges to his conviction and sentence on direct appeal, the Court can think of no reason to excuse his failure to timely file a federal habeas petition at the conclusion of direct appeal proceedings in 2003.  Oberacker himself offers no explanation in this regard.

---

[6] In his Traverse, Oberacker states he believed the state appellate court's 2001 decision reversed his conviction.  (Doc. No. 9 at 12.)  This statement is disingenuous, at best. Assuming Oberacker believed the state appellate court had reversed his conviction on direct appeal, he offers no explanation for why he believed he was nonetheless imprisoned without retrial for another 16 years.

24

Notwithstanding the above, and assuming, *arguendo*, his appellate counsel was ineffective for failing to challenge Oberacker's conviction and sentence on direct appeal, the Court finds Oberacker has failed to demonstrate this alleged ineffectiveness prevented him from timely filing the instant habeas Petition.  Although Oberacker claims he did not become aware until 2016 that counsel failed to challenge his conviction and sentence on direct appeal, the Court notes the state appellate court's 2001 and 2003 direct appeal decisions are both clearly confined to the issue of Oberacker's sexual predator classification and do not address any challenges to his underlying conviction or prison sentence.  *See State v. Oberacker*, 2001 WL 280180 (Ohio App. 8th Dist. March 22, 2001); *State v. Oberacker*, 2003 WL 125277 (Ohio App. 8th Dist. Jan. 16, 2003).  Indeed, in the 2001 decision, the state appellate court expressly rejected Oberacker's argument that "his claim of ineffective assistance of counsel went beyond counsel's failure to object to the lack of notice [of the sexual predator classification hearing] and encompassed a failure to protect defendant's due process rights."  *State v. Oberacker*, 2001 WL 280180 at *1.

Oberacker nonetheless claims he "could not and did not see" the state appellate court's 2001 decision until 2016 due to "personal safety reasons beyond his control."  (Doc. No. 9 at 12.)  In his 26(B) Application, Oberacker explains he was "in fear for his life due to abuse from a state paired cellmate" and, as a result, was placed in a mental health unit and "not able to receive court documents."  (Doc. No. 8-1, Exh. 26 at PageID# 347.)  Oberacker does not, however, explain how he was prevented (throughout this entire time period) from monitoring his appeals by other means, such as directly contacting the state court clerk's office or conducting legal research.  Moreover, as Respondent correctly notes, after the state appellate court issued its 2001

decision, Oberacker returned to the state trial court for his sexual predator classification hearing, where he was represented by counsel.  (Doc. No. 8-1, Exh. 12.)  Oberacker does not explain why he did not (or could not) have discussed the status, nature, and scope of his direct appeal with counsel at that time.

Thus, even assuming, *arguendo,* appellate counsel was ineffective for failing to challenge his conviction and prison sentence on direct appeal and, further, that said ineffectiveness constituted a state-created impediment, Oberacker has not demonstrated it prevented him from filing his federal habeas Petition for over a decade.  Because he has not shown *"a causal relationship between the unconstitutional state action and being prevented from filing the [habeas] petition."* the Court finds he is not entitled to a later start date under § 2244(d)(1)(B).  *See Winkfield*, 2003 WL 21259699 at *4; *Webb,* 2017 WL 655774 at * 5; *Heid*, 2017 WL 2225458 at * 7.

**D.     Equitable Tolling**

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010).  Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011).  However, the equitable tolling doctrine is granted by courts only "sparingly."  *See Robertson*, 624 F.3d at 784.  Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate

26

burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir.2011)(quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and, (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland,* 130 S.Ct. at 2565. *See also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." *Holland*, 130 S.Ct. at 2565. That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See e.g. Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012); *Vroman*, 346 F.3d at 605 (stating a court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights"); *Henson v. Warden, London Correctional Inst.*, 620 Fed. Appx. 417, 419 (6th Cir. 2015).

Here, Oberacker argues he is entitled to equitable tolling because he was "unaware and had no reason to suspect his criminal appeal was ignored." (Doc. No. 9 at 16.) He maintains he did not realize his appellate counsel failed to challenge his conviction and sentence, until the state appellate court denied his state habeas Petition in January 2017. (*Id*.) Oberacker claims he then diligently pursued his rights by (1) filing his 26(B) Application only eighty four (84) days later, on April 6, 2017; (2) timely appealing the denial of his 26(B) Application to the Ohio Supreme Court; and (3) promptly filing his federal habeas Petition thirty six (36) days after the Ohio Supreme Court declined jurisdiction over his appeal from the denial of his 26(B) Application. (*Id*.)

27

Respondent argues equitable tolling is not appropriate because Oberacker "was woefully dilatory in the pursuit of his claims before the state courts and before this federal habeas Court." (Doc. No. 8 at 12.)  He notes Oberacker "did have a direct appeal from his conviction – in fact he had two," arguing "his appellate attorney's strategic choice to challenge his sexual predator classification alone does not equate to the complete denial of direct review of his conviction." (*Id*.)  Respondent also disputes Oberacker's claim he was not aware his appellate counsel failed to challenge his conviction and sentence for sixteen years.  (*Id*.)  Finally, Respondent argues "neither Oberacker's *pro se* status, nor claimed lack of knowledge of his own direct appeal are an 'extraordinary circumstance' that can excuse his 'prolonged inattention' by some 13 years to his federal habeas deadline."  (*Id*. at 14.)

The Sixth Circuit has found that "[b]oth ineffective assistance of counsel and 'a substantial, involuntary delay in learning about the status of their appeals' may constitute extraordinary circumstances sufficient to warrant" equitable tolling.  *Keeling*, 673 F.3d at 462 (quoting *Robinson v. Easterling*, 2011 WL 1977272 at * 3 (6th Cir. May 20, 2011)).  However, "petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision.'"  *Robinson*, 2011 WL 1977272 at * 3 (quoting *Miller v. Collins*, 305 F.3d 491, 496 (6th Cir. 2002)).  Rather, to obtain equitable tolling, a petitioner "must demonstrate that he exercised a reasonable diligence in protecting his appellate rights."  *Id*.

In *Keeling*, for example, the Sixth Circuit rejected an argument for equitable tolling based on a petitioner's failure to monitor his case and his appellate counsel's representations:

> Keeling himself admits that he waited almost three years after the decision in his original appeal to the Ohio Court of Appeals before filing his first *pro se*

28

postconviction motion.  "While this Court has recognized that attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status update, ... this Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half."  *Robinson [v. Easterling*], 424 Fed.Appx. [439,] 443 [ (6th Cir. 2011) ].  In *Robinson*, the petitioner requested case updates from his attorney, who failed to provide them, and the petitioner waited eighteen months between his last two update requests.  *Id.* at 440–41, 443.  This court found that the petitioner failed to exercise the required diligence in pursuing his rights and affirmed the district court decision declining to equitably toll the statute of limitations, even though the petitioner's attorney failed to inform him of the appellate decision for more than one year after it issued.  *Id.* at 440–43.  Further, we have declined to allow equitable tolling where a petitioner's attorney misled him into believing that his appeal was still pending before the state court because the petitioner failed to diligently monitor the progress of his appeal.  *Winkfield v. Bagley*, 66 Fed.Appx. 578, 583–84 (6th Cir. 2003).  Similarly, this court has declined to equitably toll the statute of limitations where a petitioner alleged that the state court and his attorney failed to inform him that a decision had been rendered affirming his conviction.  *Elliott v. Dewitt*, 10 Fed.Appx. 311, 312–13 (6th Cir. 2001).

673 F.3d at 463.  Like the petitioner in *Keeling*, the Court finds Oberacker failed to exercise reasonable diligence in either monitoring his appeal or protecting his federal habeas rights.  Over thirteen years elapsed between the Ohio Supreme Court's dismissal of his direct appeal (May 16, 2003) and the date he filed his state habeas Petition (November 21, 2016).  As set forth below, Oberacker has failed to provide a sufficient explanation for his failure to take any action, throughout this lengthy time period, to protect his rights.

First, the Court is not persuaded equitable tolling is appropriate on the basis Oberacker was allegedly not aware until 2016 that counsel failed to challenge his conviction and sentence on direct appeal.  As discussed *supra*, the state appellate court's 2001 and 2003 direct appeal decisions are both clearly confined to the issue of Oberacker's sexual predator classification and do not address any challenges to his underlying conviction or prison sentence.  A careful reading of these decisions should have immediately alerted Oberacker to the fact his direct appeal did not challenge his conviction and/or prison sentence.  This, in turn, should have prompted him to

29

timely file a 26(B) Application to address appellate counsel's alleged ineffectiveness.  Instead, Oberacker waited over thirteen years, until April 2017, to do so.

Moreover, Oberacker's claim he "could not and did not see" the state appellate court's direct appeal decisions until 2016 is unavailing.  As noted above, Oberacker states he was "in fear for his life due to abuse from a state paired cellmate" and, as a result, was "not able to receive court documents."  (Doc. No. 8-1, Exh. 26 at PageID# 347.)  Oberacker does not, however, explain why he was unable to monitor his appeals by other means, such as directly contacting the state court clerk's office or conducting legal research.  Additionally, after the state appellate court issued its 2001 decision, Oberacker returned to the state trial court for his sexual predator classification hearing, where he was represented by counsel.  (Doc. No. 8-1, Exh. 12.) Oberacker does not explain why he did not (or could not) have discussed the status, nature, and scope of his direct appeal with counsel at that time.

Thus, and for all the reasons set forth above, the Court finds Oberacker has failed to demonstrate he has been reasonably diligent in pursuing his rights.  *See e.g., Vroman*, 346 F.3d at 605 (finding petitioner's decision to proceed solely to the Ohio Supreme Court rather than filing his federal habeas petition and protecting his federal constitutional rights shows a lack of diligence); *Robinson*, 424 Fed. App'x at 442 ("[t]his Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half, and we decline to do so here"); *Dudley v. Clipper*, 2014 WL 6896080 at * 8-9 (N.D. Ohio Dec. 8, 2014).

The Court also rejects any suggestion that Oberacker's *pro se* status and/or ignorance of the law constitute  "extraordinary circumstances" warranting equitable tolling.  The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable

30

tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015). *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015). Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient. *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing"); *Burden v. Bunting*, 2016 WL 5417834 at * 6 (N.D. Ohio July 15, 2016) ("Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling"); *Johnson v. LaRose*, 2016 WL 5462635 at * 10 (N.D. Ohio July 8, 2016) ("A petitioner's *pro se* status and his unawareness of the law provide no basis for equitable tolling"). Accordingly, and under the circumstances presented, the Court finds Oberacker has failed to demonstrate his *pro se* status, limited education, and/or lack of legal training constitute extraordinary circumstances justifying equitable tolling.

In sum, because Oberacker failed to exercise his rights diligently and no extraordinary circumstance prevented him from filing the instant Petition, the Court finds equitable tolling is not warranted in this case.

31

E.    **Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1).  *Id*. at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).  In making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence."  *Id*. (quoting *Schlup*, 513 U.S. at 332).

Here, Oberacker asserts, summarily, he is "not guilty of the crime in which he's already served now nearly eighteen (18) years."  (Doc. No. 9 at 19.)  Oberacker, however, does not identify any new, reliable evidence of his actual innocence; i.e., exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available to him at

the time of his underlying criminal proceedings.  *See Schlup*, 513 U.S. at 324.  Accordingly, the

Court finds Oberacker has not demonstrated he is entitled to the actual innocence exception.[7]

### III. Conclusion

For the foregoing reasons, it is recommended the Court find the instant Petition is time-

barred under § 2244(d)(1).  It is further recommended Respondent's Motion to Dismiss (Doc.

No. 8) be GRANTED and the Petition be DISMISSED.


 *s/ Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date: May 16, 2018


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of
Court within fourteen (14) days after the party objecting has been served with a copy of
this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within
the specified time may waive the right to appeal the District Court's order.  *See United
States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g
denied*, 474 U.S. 1111 (1986).**

---

[7]  The Court notes Oberacker pled guilty to two counts of rape and testified at his sexual
predator classification hearing that he had at least ten episodes of sexual intercourse with
his two minor female victims.  *See State v. Oberacker*, 2003 WL 125277 at * 5.